## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JENNIFER NELSON**,** on behalf of herself and her minor son, E.N-H., and all others similarly situated, | Case No. <u>1:23-cv-680</u> (BKS/CFH) |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| -against- | **JURY TRIAL DEMANDED** |
| ALBANY ENT & ALLERGY SERVICES, PC**,** | |
| Defendant. | |

Plaintiff Jennifer Nelson ("Plaintiff"), on behalf of herself and her minor son, E.N-H. and all similarly situated persons, alleges the following against Albany ENT & Allergy Services, PC ("AENT" or "Defendant") based upon personal knowledge with respect to herself and on information and belief derived from, among other things, investigation by her counsel and review of public documents as to all other matters:

### INTRODUCTION

1.      Plaintiff brings this class action against AENT for its failure to properly secure and safeguard Plaintiff's and other similarly situated current and former AENT patients' and employees', including minors' (collectively defined herein as the "Class" or "Class Members"), personally identifiable information ("PII") and protected health information ("PHI"), including

1

names, Social Security numbers, birth dates, addresses, medical histories and treatments (collectively, the "Private Information")[1] from multiple criminal ransomware gangs.[2]

2.     AENT, based in Albany, New York, is a medical practice focusing on ear, nose, throat, and neck disorders, as well as allergy testing and immunotherapy.

3.     Founded in 1977, AENT serves hundreds of thousands of pediatric and adult patients in New York's Capital Region.

4.     On or about May 25, 2023, AENT filed official notice of what it referred to as a "data event" with the Maine Attorney General's Office. It was around this same time when AENT also sent out data breach notice letters (the "Notice") to individuals whose Private Information was compromised as a result of the event.

5.     Based on Defendant's Notice, it became aware of suspicious activity on its computer network on or around March 27, 2023. In response, Defendant launched an investigation to determine the nature and scope of the suspicious activity. AENT's investigation revealed that an unauthorized party had access to certain files that contained sensitive patient and employee personal and health information, and that such access took place between March 23, 2023 and April 4, 2023 (the "Data Breach").

6.     On April 23, 2023, well-known ransomware group, "BianLian," claimed to have downloaded and posted 630 GB of files from Defendant's network on its leak site.[3]

---

[1] *See* "Notice of Data Event" to Maine Attorney General, *available at* https://apps.web.maine.gov/online/aeviewer/ME/40/8b528710-697c-4164-945d-d710b8409ec5/fe83034c-572e-44f2-bd04-e5e9179fac70/document.html; *see also* https://www.timesunion.com/business/article/albany-ent-allergy-albany-clifton-park-hit-18127448.php#:~:text=ALBANY%20%E2%80%94%0A%20major%20Capital%20Region,misuse%20resulted%20from%20the%20incident (last visited on June 1, 2023).

[2] *See* https://www.databreaches.net/two-ransomware-groups-claimed-to-have-attacked-albany-ent-allergy-services-and-leaked-data-but-aent-doesnt-mention-that-at-all-in-their-notification/ (last visited on June 1, 2023).

[3] *Id.*

7.      On April 28, 2023, a second well-known ransomware group, "RansomHouse," also listed AENT on its leak site, claiming to have locked AENT's systems on March 27, 2023; RansomHouse also claimed to have downloaded 2 TB of data from Defendant's systems, which it subsequently leaked on or about May 9, 2023.[4]

8.      As a result of Defendant's Data Breach, and in light of their Private Information now being in the hands of cybercriminals, Plaintiff and Class Members were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. This substantial and imminent risk will remain for their respective lifetimes.

9.      Armed with the Private Information accessed in the Data Breach (and a head start), the cybercriminals who carried out the Data Breach can and will commit a variety of crimes, including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

10.      There has been no assurance offered by AENT that all personal data or copies of data have been recovered or destroyed, or that Defendant has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

11.      Therefore, Plaintiff and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data

---

[4] *Id.*

Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

12.    Plaintiff brings this class action lawsuit to address AENT's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

13.    The potential for improper disclosure and theft of Plaintiff's and Class Members' Private Information was a known risk to AENT, and thus AENT was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

14.    Upon information and belief, AENT failed to properly monitor and implement adequate data security practices with regard to its computer network and systems that housed Plaintiff's and Class Members' Private Information. Had AENT properly monitored its networks and implemented adequate data security practices, it could have prevented the Data Breach or, at the very least, discovered the Data Breach sooner.

15.    Plaintiff's and Class Members' identities are now at risk because of AENT's negligent conduct, which led to the Private Information that it collected and maintained falling into the hands of data thieves and other unauthorized third parties.

16.    Plaintiff seeks to remedy these harms on behalf of herself, her minor son, and all similarly situated individuals whose Private Information was accessed and exfiltrated during the Data Breach.

## PARTIES

17.    Plaintiff Nelson and her son are, and at all times mentioned herein were, individual citizens of the State of New York.

18.    Defendant AENT is a major Capital Region medical practice, with its principal place of business located in Albany, New York.

**JURISDICTION AND VENUE**

19.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class. At least one Class Member and Defendant are citizens of different states.

20.    This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business this District and does substantial business in this District.

21.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL ALLEGATIONS**

A. **AENT's Business and Collection of Plaintiff's and Class Members' Private Information**

22.    Founded in 1977, AENT is a medical practice based in Albany, New York that focuses on treating ear, nose, throat, and neck disorders, as well as allergy testing and immunotherapy. AENT employs dozens of people and, upon information and belief, generates approximately $21 million in annual revenue.

23.    As a condition of receiving medical services from AENT, patients are required to entrust it with highly sensitive personal and health information.

24.    In its Privacy Policy, AENT promises its patients that their highly sensitive personal information is "only accessible by a limited number of persons who have special access rights to such systems, and are required to keep the information confidential."[5] It also states it does not

---

[5] *See* https://albanyentandallergy.com/privacy-policy/ (last visited May 31, 2023).

"sell, trade *or otherwise transfer* to outside parties [patients'] Personally Identifiable Information" (emphasis added).[6]

25.    In its HIPAA Omnibus Notice of Privacy Practices, AENT promises that it will provide notification to affected individuals within 60 days of a data breach incident.[7]

26.    In sum, because of the highly sensitive and personal nature of the information AENT acquires and stores with respect to its patients, AENT promises to, among other things, keep patients' Private Information private; comply with industry standards related to data security and the maintenance of its patients' Private Information; inform its patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services it provides; and provide adequate notice to patients if their Private Information is disclosed without authorization.

27.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, AENT assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure and exfiltration.

28.    Plaintiff and Class Members relied on AENT to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Information, which Defendant ultimately failed to do.

---

[6] *Id*.
[7] *See* https://albanyentandallergy.com/hipaa-statement/ (last visited May 31, 2023).

B. **The Data Breach and Defendant's Inadequate Notice to Plaintiff and Class Members**

29. According to Defendant's Notice, it learned of unauthorized access to its computer systems "on or around" March 27, 2023, with such unauthorized access having taken place between March 23 and April 4, 2023.

30. Through the Data Breach, at least two ransomware groups, BianLian and RansomHouse, accessed a cache of highly sensitive Private Information, including names, dates of birth, Social Security numbers, and patient charts that included medical history and treatment information, exfiltrated the information from AENT's network, and leaked it on public forums.

31. On or about May 31, 2023, just over two months after AENT learned that the Class's Private Information was first accessed by cybercriminals, AENT patients began receiving their notices of the Data Breach informing them that its investigation determined that their Private Information was accessed.

32. AENT delivered Data Breach Notification Letters to Plaintiff and Class Members, alerting them that their highly sensitive Private Information had been exposed in a "security incident."

33. The notice letter then listed time-consuming, generic steps that victims of data security incidents can take, such as getting a copy of a credit report or notifying law enforcement about suspicious financial account activity. Other than providing one year of credit monitoring that Plaintiff and Class Members would have to affirmatively sign up for and a call center number that victims could contact with questions, AENT offered no other substantive steps to help victims like Plaintiff and Class Members to protect themselves. On information and belief, AENT sent a similar generic letter to all other individuals affected by the Data Breach.

34.    AENT had obligations created by contract, industry standards, common law, and representations made to Plaintiff and Class Members to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

35.    Plaintiff and Class Members provided their Private Information to AENT with the reasonable expectation and mutual understanding that AENT would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

36.    AENT's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

37.    AENT knew or should have known that its electronic records would be targeted by cybercriminals.

C. **The Healthcare Sector is Particularly Susceptible to Data Breaches**

38.    AENT was on notice that healthcare entities are particularly susceptible targets for data breaches.

39.    AENT was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PHI)."[8]

---

[8] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on May 31, 2023).

40.    The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[9]

41.    The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[10] In 2022, the largest growth in compromises occurred in the healthcare sector.[11]

42.    Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12]

43.    Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty

---

[9] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n. (Oct. 4, 2019), *available at*: https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited on May 31, 2023).

[10] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last visited on May 31, 2023).

[11] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited on May 31, 2023).

[12] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at*: https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on May 31, 2023).

percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[13]

44.     Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[14]

45.     As a healthcare provider, AENT knew, or should have known, the importance of safeguarding its patients' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on AENT's patients as a result of a breach. AENT failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

**D.  AENT Failed to Comply with HIPAA**

46.     Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

---

[13] *Id*.

[14] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited on May 31, 2023).

47.     AENT's Data Breach resulted from a combination of insufficiencies that indicate AENT failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from AENT's Data Breach that AENT either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiff's and Class Members' PHI.

48.     Plaintiff's and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

49.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

50.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

51.     Plaintiff's and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

52.     Plaintiff's and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

53.     Based upon Defendant's Notice to Plaintiff and Class Members, AENT reasonably believes that Plaintiff's and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

54.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

55.     AENT reasonably believes that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

56.     Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

57.     Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

58.     AENT reasonably believes that Plaintiff's and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

59.     It is reasonable to infer that Plaintiff's and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

60.     It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

61.     After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for

recipients of that notice, including Plaintiff and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

62.     In addition, AENT's Data Breach could have been prevented if AENT had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

63.     AENT's security failures also include, but are not limited to:

a.   Failing to maintain an adequate data security system to prevent data loss;

b.   Failing to mitigate the risks of a data breach and loss of data;

c.   Failing to ensure the confidentiality and integrity of electronic protected health information AENT creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.   Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.   Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.   Failing to identify and respond to suspected or known security incidents;

g.   Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.  Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

64.    Because AENT has failed to comply with HIPAA, while monetary relief may cure some of Plaintiff's and Class Members' injuries, injunctive relief is also necessary to ensure AENT's approach to information security is adequate and appropriate going forward. AENT still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiff and Class Members. Without the supervision of the Court through injunctive relief, Plaintiff's and Class Members' Private Information remains at risk of subsequent data breaches.

**E.  AENT Failed to Comply with FTC Guidelines**

65.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in

violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

66.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

67.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

68.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

69.    As evidenced by the Data Breach, AENT failed to properly implement basic data security practices. AENT's failure to employ reasonable and appropriate measures to protect

against unauthorized access to Plaintiff's and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

70.    AENT was at all times fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendant was also aware of the significant repercussions that would result from its failure to do so.

**F.    AENT Failed to Comply with Industry Standards**

71.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

72.    Some industry best practices that should be implemented by businesses dealing with sensitive PHI like AENT include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

73.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

74.    Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5,

PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

75.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**G.  AENT Breached its Duty to Safeguard Plaintiff's and Class Members' Private Information**

76.     In addition to its obligations under federal and state laws, AENT owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. AENT owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

77.     AENT breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. AENT's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.  Failing to adequately protect patients' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

      e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

      f.    Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

      g.    Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

78. AENT negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

79. Had AENT remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

80. Accordingly, Plaintiff's and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiff and Class Members also lost the benefit of the bargain they made with AENT.

**H. AENT Failed to Take Sufficient Precautions Against the Type of Social Engineering Hacking that Occurred Here**

81. In addition to the foregoing advice provided by the FTC and industry commentators, those same organizations have long warned against the type of social engineering hacking that occurred in this data breach and have promoted ways to protect against such attacks.

82. In fact, as early as May 2018 the FTC warned against exactly the type of social engineering hack that occurred here. The agency published a report as part of its "Business

Guidance Resources" entitled "Scams and Your Small Business: A Guide for Business."[15]  In a section entitled "Social Engineering, Phishing, and Ransomware" the Agency warned:

> Cyber scammers can trick employees into giving up confidential or sensitive information, such as passwords or bank information. It often starts with a phishing email, social media contact, or **a call that seems to come from a trusted source, such as a supervisor or other senior employee, but creates urgency or fear**. Scammers tell employees to wire money or **provide access to sensitive company information**. Other emails may look like routine password update requests or other automated messages but are actually attempts to steal your information.[16]

83.    Among other things, the Agency recommends that businesses should "Provide **regular security and privacy training** to … device engineers, and send frequent security and privacy reminders to help prevent them from falling victim to social engineering tactics, such as targeted phishing attempts."[17]

84.    Similarly, cyber security industry leaders and commentators have warned against the threat posed by social engineering for more than a decade.[18]  For instance, in January 2021 cybersecurity industry leader Kaspersky Lab provided simple recommendations to prevent social engineering attacks.[19]  It recommended that companies train their employees to do things like "check the source" of contacts, and confirm that the source is authentic by asking for information you would expect the source to have (*e.g.*, if it is a call from the IT department do they know your desk location, or computer number).  It also suggests ensuring devices are protected through recommendations like: (1) "Keep software and firmware regularly updated;" (2) advising

---

[15] https://www.ftc.gov/business-guidance/resources/scams-your-small-business-guide-business
[16] *Id.* (emphasis added)

[17] *See* https://www.ftc.gov/business-guidance/resources/careful-connections-keeping-internet-things-secure (last visited on May 31, 2023).

[18] Olavsrud, Thor, *9 Best Defenses Against Social Engineering Attacks* (eSecurity Plane, Oct. 19, 2010) https://www.esecurityplanet.com/trends/best-defenses-against-social-engineering-attacks/ (providing the results of social engineering tests and proposing solutions).

[19] *See* https://usa.kaspersky.com/resource-center/threats/how-to-avoid-social-engineering-attacks (last visited on May 31, 2023).

employees to not "use the same password for different accounts;" and (3) "For critical [internal company] accounts, use two-factor authentication."[20]

85.    Kaspersky Lab is far from the only industry leader that provides these types of recommendations. In November 2020, Security Magazine published an article entitled "Avoid social engineering attacks and protect employees" which recommended automated traffic analysis programs that can automatically monitor for malicious programs, and regular training and education for employees to identify when they are being socially engineered, noting that: "[i]f your company doesn't offer it, there are several free online courses."[21]

86.    Similarly, IBM also recommends regular cybersecurity training to help employees recognize social engineering attempts, and software or hardware that "can help security teams quickly detect and neutralize security threats that infect the network via social engineering tactics."[22] The company then goes on to recommend:

> **Access control policies**: Secure access control policies and technologies, including multi-factor authentication, adaptive authentication and a zero-trust security approach can limit cybercriminals' access to sensitive information and assets on the corporate network even, if they obtain users' login credentials.[23]

87.    Upon information and belief, Defendant did not implement these recommendations at all, or if they were implemented did so negligently, because if it had adequately implemented such recommendations then the Data Breach would not have occurred. Sufficiently implementing appropriate access controls, such as proper access control policies and two factor authentication, is just one thing that on information and belief Defendant failed to do that could have prevented

---

[20] *Id.*

[21] Jackson, Adam, *Avoid social engineering attacks and protect employees* (Security Magazine, Nov. 11, 2020) *available at* https://www.securitymagazine.com/articles/93536-avoid-social-engineering-attacks-and-protect-employees (last visited on May 31, 2023).

[22] *See* https://www.ibm.com/topics/social-engineering (last visited on May 31, 2023).

[23] *Id.*

the hacker from using a single customer support employee's access information to access vast amounts of data, or to access supposedly secure systems like SendSafely.

I. **AENT Should Have Known that Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft**

88.    The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiff and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[24] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

89.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

90.    Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security

---

[24] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on May 31, 2023).

number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

91.    In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

92.    Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiff's and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class Members.

93.    For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[25] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

94.    Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank

---

[25] See IdentityTheft.gov, Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited May 31, 2023).

fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

95.    In fact, a study by the Identity Theft Resource Center[26] shows the multitude of harms caused by fraudulent use of PII:



96.    PHI is also especially valuable to identity thieves.  As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[27]

97.    Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

---

[26] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on May 31, 2023).

[27] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on May 31, 2023).

98.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[28]

99.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

100.    Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[29]

101.    The ramifications of AENT's failure to keep its patients' and employees' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

102.    Here, not only was sensitive medical information compromised, but Social Security numbers were compromised too. The value of PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities

---

[28] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on May 31, 2023).

[29] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on May 31, 2023).

notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

103.    It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[30]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

104.    PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

105.    As a result, Plaintiff and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiff and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

**J.    Plaintiff's and Class Members' Damages**

106.    Plaintiff Nelson's minor son, E.N-H., is a current patient of AENT. In order to receive medical services and treatment from Defendant, Plaintiff was required to provide AENT with substantial amounts of her PII and PHI and that of her son's as well.

107.    On or about May 31, 2023, Plaintiff Nelson received two letters entitled "Notice of Security Incident" – one for herself and one for her minor son – which informed her that their

---

[30] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited May 31, 2023).

Private Information, including their name, date of birth, address, Social Security number, and []
patient chart that includes her son's medical history and treatment information had been accessed
during the Data Breach.

108.    The notice letter offered Plaintiff and her son credit monitoring services that will
soon end – an insufficient remedy considering she and her son will now experience a lifetime of
increased risk of identity theft, including but not limited to, potential medical fraud.

109.    Plaintiff Nelson suffered actual injury in the form of time spent dealing with the
Data Breach and both she and her son have now suffered, and will continue to suffer, the increased
risk of fraud resulting from the Data Breach and/or monitoring their accounts for fraud.

110.    Plaintiff Nelson and her minor son would not have provided their Private
Information to Defendant had Defendant timely disclosed that its systems lacked adequate
computer and data security practices to safeguard its patients' (and their parents' and/or legal
guardians') personal and health information from theft, and that those systems were subject to a
data breach.

111.    Plaintiff Nelson and her minor son suffered actual injury in the form of having their
Private Information compromised and/or stolen as a result of the Data Breach.

112.    Plaintiff Nelson and her minor son have also suffered actual injury in the form of
damages to and diminution in the value of their personal, health, and financial information – a
form of intangible property that Plaintiff Nelson entrusted to Defendant in order for E.N-H. to
receive healthcare services from Defendant and which was compromised in, and as a result of, the
Data Breach.

113.    Plaintiff Nelson and her minor son suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by their Private Information being placed in the hands of criminals.

114.    Plaintiff Nelson and her minor son have a continuing interest in ensuring that their Private Information, which remains in the possession of Defendant, is protected and safeguarded from future breaches.

115.    As a result of the Data Breach, Plaintiff Nelson made reasonable efforts to mitigate the impact of the Data Breach on herself and on her minor son, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendant. Plaintiff Nelson has already spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

116.    As a result of the Data Breach, Plaintiff Nelson has suffered anxiety as a result of the release of her and her minor son's Private Information, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using their PII and PHI for purposes of committing cyber and other crimes against them, including, but not limited to, fraud and identity theft. Plaintiff Nelson is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life and that of her minor child.

117.    Plaintiff Nelson and her minor son, E.N-H., also suffered actual injury from having their Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of their PII and PHI, a form of property that Defendant obtained from

them; (b) violation of their privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud they now face.

118.    As a result of the Data Breach, Plaintiff Nelson anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

119.    In sum, Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

120.    Plaintiff and Class Members entrusted their Private Information to Defendant in order to receive Defendant's services.

121.    Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendant's inadequate data security practices.

122.    As a direct and proximate result of AENT's actions and omissions, Plaintiff and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

123.    Further, and as set forth above, as a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

124.   Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

125.   Plaintiff and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiff and Class Members.

126.   The Private Information maintained by and stolen from Defendant's systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiff and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiff and Class Members.

127.   Plaintiff and Class Members also lost the benefit of the bargain they made with AENT. Plaintiff and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price paid by Plaintiff and Class Members (or, in some cases, on their behalf) to AENT was intended to be used by AENT to fund adequate security of AENT's system and protect Plaintiff's and Class Members' Private Information. Thus, Plaintiff and the Class did not receive the benefit of the bargain.

128.   Additionally, Plaintiff and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[31] In fact, the data marketplace is so sophisticated that consumers can sell

---

[31] See Data Coup, https://datacoup.com/ (last visited on May 31, 2023).

their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies.[32] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[33]

129.     As a result of the Data Breach, Plaintiff's and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiff and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiff and the Class Members, thereby causing additional loss of value.

130.     Finally, Plaintiff and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

      a.   Monitoring for and discovering fraudulent charges;

      b.   Canceling and reissuing credit and debit cards;

      c.   Addressing their inability to withdraw funds linked to compromised accounts;

      d.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

---

[32] *What is digi.me?, DIGI.ME,* https://digi.me/what-is-digime/ (last visited Jan. 16, 2023).
[33] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Jan. 16, 2023).

e.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

f.   Contacting financial institutions and closing or modifying financial accounts;

g.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

h.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

i.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

131.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of AENT, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

132.   As a direct and proximate result of AENT's actions and inactions, Plaintiff and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

133.   Plaintiff sues on her own behalf, on behalf of her minor child E.N-H., as well as on behalf of a Nationwide Class, New York Subclass, and Minor Subclass (collectively, the "Class"

or "Classes") for damages and injunctive relief pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

### Nationwide Class

All individuals residing in the United States whose PII and/or PHI was compromised in the AENT Data Breach which was announced on or about May 25, 2023.

### New York Subclass

All individuals residing in New York whose Sensitive Information was compromised in the AENT Data Breach including all those who received notice of the breach.

### Nationwide Minor Subclass

All underage individuals residing in the United States whose PII and/or PHI was compromised in the AENT Data Breach which was announced on or about May 25, 2023.

134.    Excluded from the Classes are Defendant and its parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

135.    Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

136.    This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Fed. R. Civ. P. 23.

137.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of at least 244,000 current and former patients and employees of AENT, including minors, whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through AENT's records, Class Members' records, publication notice, self-identification, and other means.

32

138.  <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.  Whether AENT engaged in the conduct alleged herein;

b.  Whether AENT's conduct violated the FTCA, HIPAA, New York's Information Security Breach and Notification Act (N.Y. Gen. Bus. Law § 899-AA, *et seq.*), and/or New York General Business Law § 349;

c.  When AENT learned of the Data Breach;

d.  Whether AENT's response to the Data Breach was adequate;

e.  Whether AENT unlawfully lost or disclosed Plaintiff's and Class Members' Private Information;

f.  Whether AENT failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g.  Whether AENT's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h.  Whether AENT's data security systems prior to and during the Data Breach were consistent with industry standards;

i.  Whether AENT owed a duty to Class Members to safeguard their Private Information;

j.  Whether AENT breached its duty to Class Members to safeguard their Private Information;

k.  Whether hackers obtained Class Members' Private Information via the Data Breach;

l.  Whether AENT had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class Members;

m.  Whether AENT breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class Members;

n.  Whether AENT knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiff and Class Members suffered as a result of AENT's misconduct;

p.  Whether AENT's conduct was negligent;

q.  Whether AENT's conduct was *per se* negligent;

r.  Whether AENT was unjustly enriched;

s.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiff and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u.  Whether Plaintiff and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

139.  Typicality. Plaintiff's claims are typical of those of other Class Members because Plaintiff's Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*,

all Class Members were injured through the common misconduct of AENT. Plaintiff are advancing

the same claims and legal theories on behalf of themselves and all other Class Members, and there

are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of Class Members

arise from the same operative facts and are based on the same legal theories.

140.   <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and

protect the interests of Class Members. Plaintiff's counsel is competent and experienced in

litigating class actions, including data privacy litigation of this kind.

141.   <u>Superiority</u>. A Class action is superior to other available methods for the fair and

efficient adjudication of this controversy and no unusual difficulties are likely to be encountered

in the management of this class action. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class

Members would likely find that the cost of litigating their individual claims is prohibitively high

and would therefore have no effective remedy. The prosecution of separate actions by individual

Class Members would create a risk of inconsistent or varying adjudications with respect to

individual Class Members, which would establish incompatible standards of conduct for AENT.

In contrast, conducting this action as a class action presents far fewer management difficulties,

conserves judicial resources and the parties' resources, and protects the rights of each Class

Member.

142.   Finally, all members of the proposed Class are readily ascertainable. AENT has

access to the names and addresses and/or email addresses of Class Members affected by the Data

Breach. Class Members have already been preliminarily identified and sent notice of the Data

Breach by AENT.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION
## NEGLIGENCE

(On behalf of Plaintiff, her minor son, and the Classes)

143.    Plaintiff restates and realleges all of the allegations in every preceding paragraph as if fully set forth herein.

144.    AENT knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

145.    AENT knew or should have known of the risks inherent in collecting the Private Information of Plaintiff and Class Members and the importance of adequate security. AENT was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

146.    AENT owed a duty of care to Plaintiff and Class Members whose Private Information was entrusted to it. AENT's duties included, but were not limited to, the following:

    a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.    To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.    To employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class Members pursuant to HIPAA, the FTCA,

New York's Information Security Breach and Notification Act (N.Y. Gen. Bus. Law § 899-AA, *et seq.*), and/or New York General Business Law § 349;

e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.  To promptly notify Plaintiff and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

147.   AENT's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

148.   AENT's duty also arose because Defendant was bound by industry standards to protect its patients' confidential Private Information.

149.   Plaintiff and Class Members were foreseeable victims of any inadequate security practices on the part of Defendant, and AENT owed them a duty of care to not subject them to an unreasonable risk of harm.

150.   AENT, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' Private Information within AENT's possession.

151.   AENT, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class Members.

152.    AENT, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

153.    AENT breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

     a.    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

     b.    Failing to adequately monitor the security of its networks and systems;

     c.    Failing to periodically ensure that its email system maintained reasonable data security safeguards;

     d.    Allowing unauthorized access to Class Members' Private Information;

     e.    Failing to comply with the FTCA; and

     f.    Failing to detect in a timely manner that Class Members' Private Information had been compromised.

154.    AENT had a special relationship with Plaintiff and Class Members. Plaintiff's and Class Members' willingness to entrust AENT with their Private Information was predicated on the understanding that AENT would take adequate security precautions. Moreover, only AENT had the ability to protect its systems (and the Private Information that it stored on them) from attack.

155.    AENT's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

156.    As a result of AENT's ongoing failure to notify Plaintiff and Class Members regarding exactly what Private Information has been compromised, Plaintiff and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

157.    AENT's breaches of duty also caused a substantial, imminent risk to Plaintiff and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

158.    As a result of AENT's negligence in breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

159.    AENT also had independent duties under state laws that required it to reasonably safeguard Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach.

160.    As a direct and proximate result of AENT's negligent conduct, Plaintiff and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

161.    The injury and harm that Plaintiff and Class Members suffered was reasonably foreseeable.

162.    Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

163.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring AENT to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

## SECOND CAUSE OF ACTION
## NEGLIGENCE *PER SE*

(On behalf of Plaintiff, her minor son, and the Classes)

164.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

165.    Pursuant to Section 5 of the FTCA, AENT had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiff and Class Members.

166.    Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., AENT had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

167.    Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

168.    AENT breached its duties to Plaintiff and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

169.    Specifically, AENT breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

170.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures

to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of AENT's duty in this regard.

171.    AENT also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

172.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiff's and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to AENT's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information.

173.    Defendant also failed to meet the requirements and industry standards set forth under New York's Information Security Breach and Notification Act and New York's General Business Law § 349, as set forth herein.

174.    Defendant's violations of the FTCA, HIPAA, New York's Information Security Breach and Notification Act, and New York's General Business Law § 349 constitute negligence *per se*.

175.    Plaintiff's and Class Members' Private Information constitutes personal property that was stolen due to AENT's negligence, resulting in harm, injury, and damages to Plaintiff and Class Members.

176.    As a direct and proximate result of AENT's negligence *per se*, Plaintiff and the Class have suffered, and/or are at a continual, imminent and substantial  risk of suffering, injuries and damages arising from the unauthorized access of their Private Information, including but not

limited to damages from the actual misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

177.    As a direct and proximate result of AENT's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

178.    In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring AENT to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

### THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

(On behalf of Plaintiff, her minor son, and the Classes)

179.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

180.    Plaintiff and Class Members entered into a valid and enforceable contract through which they paid money to AENT in exchange for services. That contract included promises by Defendant to secure, safeguard, and not disclose Plaintiff's and Class Members' Private Information.

181.    AENT's Privacy Policy memorialized the rights and obligations of AENT and its patients. This document was provided to Plaintiff and Class Members in a manner in which it became part of the agreement for services.

182.    In the Privacy Policy, AENT commits to protecting the privacy and security of private information and promises to never share Plaintiff's and Class Members' Private Information except under certain limited circumstances.

183.   Plaintiff and Class Members fully performed their obligations under their contracts with AENT.

184.   However, AENT did not secure, safeguard, and/or keep private Plaintiff's and Class Members' Private Information, and therefore AENT breached its contracts with Plaintiff and Class Members.

185.   AENT allowed third parties to access, copy, and/or exfiltrate Plaintiff's and Class Members' Private Information without permission. Therefore, AENT breached the Privacy Policy with Plaintiff and Class Members.

186.   AENT's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, resulted in AENT providing services to Plaintiff and Class Members that were of a diminished value.

187.   As a result, Plaintiff and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendant's failure to fully perform its part of the bargain with Plaintiff and Class Members.

188.   As a direct and proximate result of AENT's conduct, Plaintiff and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

189.   In addition to monetary relief, Plaintiff and Class Members are also entitled to injunctive relief requiring AENT to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

**FOURTH CAUSE OF ACTION**
**BREACH OF IMPLIED CONTRACT**

(On behalf of Plaintiff, her minor son, and the Classes)

190. Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

191. This Count is pleaded in the alternative to Count III above.

192. AENT provides medical services to Plaintiff and Class Members. Plaintiff and Class Members formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiff and Class Members paying for services from Defendant.

193. Through Defendant's sale of medical services, it knew or should have known that it must protect Plaintiff's and Class Members' confidential Private Information in accordance with AENT's policies, practices, and applicable law.

194. As consideration, Plaintiff and Class Members paid money to AENT and turned over valuable Private Information to AENT. Accordingly, Plaintiff and Class Members bargained with AENT to securely maintain and store their Private Information.

195. AENT accepted possession of Plaintiff's and Class Members' Private Information for the purpose of providing medical services to Plaintiff and Class Members.

196. In delivering their Private Information to AENT and paying for medical services, Plaintiff and Class Members intended and understood that AENT would adequately safeguard the Private Information as part of that service.

197. Defendant's implied promises to Plaintiff and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and

implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiff's and Class Members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

198.    Plaintiff and Class Members would not have entrusted their Private Information to AENT in the absence of such an implied contract.

199.    Had AENT disclosed to Plaintiff and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and Class Members would not have provided their Private Information to AENT.

200.    As a provider of medical services, AENT recognized (or should have recognized) that Plaintiff's and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiff and the other Class Members.

201.    AENT violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiff's and Class Members' Private Information. AENT further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

202.    Additionally, AENT breached the implied contracts with Plaintiff and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

203.    AENT also breached the implied contracts with Plaintiff and Class Members by failing to implement technical policies and procedures for electronic systems that maintain

electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

204.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

205.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

206.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

207.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

208.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR 164.306(a)(94).

209.    AENT further breached the implied contracts with Plaintiff and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq*.

210.    AENT further breached the implied contracts with Plaintiff and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

211.    AENT further breached the implied contracts with Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

212.    A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide accurate and complete Private Information and to pay AENT in exchange for AENT's agreement to, *inter alia*, protect their Private Information.

213.    Plaintiff and Class Members have been damaged by AENT's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK'S INFORMATION SECURITY BREACH AND NOTIFICATION ACT (N.Y. GEN. BUS. LAW § 899-AA, *ET SEQ.*)

(On behalf of Plaintiff, her minor son, and the Classes)

214.    Plaintiff Nelson restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

215.    The acts and practices alleged herein occurred in trade or commerce in the state of New York.

216.    The Data Breach, which compromised the Private Information of New York citizens, constitutes a "breach of security," as that term is defined by NY Gen. Stat. §899-aa.

217.    In the manner described herein, Defendant unreasonably delayed the disclosure of the "breach of security" of Private Information within the meaning of NY Gen. Stat. § 899-aa.

218.    Pursuant to NT Gen. Stat. § 899-aa the Defendant's failure to disclose the Data Breach following discovery to each New York resident whose Private Information was, or was

47

reasonably believed to have been, accessed by an unauthorized person through the Data Breach constitutes an unfair trade practice pursuant to NY. Gen. Stat. § 899-aa.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**

(On behalf of Plaintiff, her minor son, and the Classes)

219.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

220.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

221.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of NYGBL § 349. The conduct alleged herein is a "business practice" within the meaning of NYGBL § 349, and the deception occurred within New York State.

222.    Defendant stored Plaintiff's and Class Members' Private Information in Defendant's electronic databases. Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with all relevant regulations and would have kept Plaintiff's and Class Members' Private Information secure and prevented the loss or misuse of that Private Information. Defendant did not disclose to Plaintiff and Class Members that its data systems were not secure.

223.    Plaintiff and Class Members would not have provided their Private Information if they had been told or knew that Defendant failed to maintain sufficient security thereof, and its inability to safely store Plaintiff's and Class Members' Private Information.

48

224. As alleged herein, Defendant engaged in the unfair or deceptive acts or practices in the conduct of consumer transactions in violation of N.Y. Gen. Bus. Law § 349, including but not limited to:

    a. Representing that its services were of a particular standard or quality that it knew or should have known were of another;

    b. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' Private Information, which was a direct and proximate cause of the Data Breach;

    c. Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

    d. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

    e. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' Private Information, including by implementing and maintaining reasonable security measures;

    f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' Private Information; and

    g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' Private Information, including duties imposed by

the FTCA, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach.

225.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information.

226.    Such acts by Defendant are and were deceptive acts or practices which are and/or were likely to mislead a reasonable consumer providing his or her Private Information to Defendant. Said deceptive acts and practices are material. The requests for and use of such Private Information in New York through deceptive means occurring in New York were consumer-oriented acts and thereby fall under the New York consumer fraud statute, NYGBL § 349.

227.    In addition, Defendant's failure to secure its customers' Private Information violated the FTCA and therefore violates N.Y. Gen. Bus. Law § 349.

228.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the Private Information of Plaintiff and Class Members, deter hackers, and detect a breach within a reasonable time, and that the risk of a data breach was highly likely. Plaintiff and Class Members accordingly seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

229.    The aforesaid conduct violated N.Y. Gen. Bus. Law § 349, in that it is a restraint on trade or commerce.

230.    Defendant's violations of N.Y. Gen. Bus. Law § 349 has an impact and general importance to the public, including the people of New York. Thousands of New Yorkers have had

their Private Information stored on the AENT's electronic database, many of whom have been impacted by the Data Breach.

231.    In addition, New York residents have a strong interest in regulating the conduct of its healthcare industry, whose lax data security practices described herein have affected thousands of people across the country.

232.    As a direct and proximate result of these deceptive trade practices, Plaintiff and Class Members are entitled to judgment under N.Y. Gen. Bus. Law § 349, to enjoin further violations, to recover actual damages, to recover the costs of this action (including reasonable attorneys' fees), and such other relief as the Court deems just and proper.

233.    On information and belief, Defendant formulated and conceived of the systems used to compile and maintain patient information largely within the state of New York, oversaw its data privacy program complained of herein from New York, and its communications and other efforts to hold participant data largely emanated from New York.

234.    Most, if not all, of the alleged misrepresentations and omissions by Defendant that led to inadequate data security measures to protect patient information occurred within or were approved within New York.

235.    Defendant's implied and express representations that it would adequately safeguard Plaintiff's and Class Members' Private Information constitute representations as to the particular standard, quality, or grade of services that such services did not actually have (as the services were of another, inferior quality), in violation of N.Y. Gen. Bus. Law § 349.

236.    Accordingly, Plaintiff, on behalf of herself and Class members, brings this action under N.Y. Gen. Bus. Law § 349 to seek such injunctive relief necessary to enjoin further violations and recover costs of this action, including reasonable attorneys' fees and other costs.

## SEVENTH CAUSE OF ACTION
## UNJUST ENRICHMENT

(On behalf of Plaintiff, her minor son, and the Classes)

237.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

238.    This Count is pleaded in the alternative to Counts III and IV above.

239.    Plaintiff and Class Members conferred a benefit on AENT by turning over their Private Information to Defendant and by paying for medical services that should have included cybersecurity protection to protect their Private Information. Plaintiff and Class Members did not receive such protection.

240.    Upon information and belief, AENT funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiff and Class Members.

241.    As such, a portion of the payments made by Plaintiff and Class Members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to AENT.

242.    AENT has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiff and Class Members that should have been used for adequate cybersecurity practices that it failed to provide.

243.    AENT knew that Plaintiff and Class Members conferred a benefit upon it, which AENT accepted. AENT profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiff's and Class Members' Private Information and prevented the Data Breach.

244.    If Plaintiff and Class Members had known that AENT had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendant.

245.    Due to AENT's conduct alleged herein, it would be unjust and inequitable under the circumstances for AENT to be permitted to retain the benefit of its wrongful conduct.

246.    As a direct and proximate result of AENT's conduct, Plaintiff and Class Members have suffered and/ or are at a continual substantial and imminent risk of suffering, injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in AENT's possession and is subject to further unauthorized disclosures so long as AENT fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

247.    Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from AENT and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by AENT from its wrongful conduct. This can be accomplished by establishing a

constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

248.    Plaintiff and Class Members may not have an adequate remedy at law against AENT, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

### EIGHTH CAUSE OF ACTION
### BREACH OF CONFIDENCE

(On behalf of Plaintiff, her minor son, and the Classes)

249.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

250.    Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by AENT and ultimately accessed and acquired in the Data Breach.

251.    As a healthcare provider, AENT has a special relationship with its patients, including Plaintiff and Class Members. Because of that special relationship, AENT was provided with and stored Plaintiff's and Class Members' Private Information and had a duty to maintain such Information in confidence.

252.    Patients like Plaintiff and Class Members have a privacy interest in personal medical and other matters, and AENT had a duty not to disclose such matters concerning its patients.

253.    As a result of the parties' relationship, AENT had possession and knowledge of highly sensitive and confidential PHI and PII belonging to Plaintiff and Class Members, information that was not generally known.

254.    Plaintiff and Class Members did not consent nor authorize Defendant to release or disclose their Private Information to an unknown criminal actor.

255.    AENT breached its duty of confidence owed to Plaintiff and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiff's and Class Members' Private Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiff's and Class members' Private Information to a criminal third party.

256.    But for AENT's wrongful breach of its duty of confidence owed to Plaintiff and Class Members, their Private Information would not have been compromised.

257.    As a direct and proximate result of AENT's wrongful breach of its duty of confidence, Plaintiff and Class Members have suffered and will continue to suffer the injuries alleged herein.

258.    It would be inequitable for AENT to retain the benefit of controlling and maintaining Plaintiff's and Class Members' Private Information at the expense of Plaintiff and Class Members.

259.    Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## NINTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

(On behalf of Plaintiff, her minor son, and the Classes)

260.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

261.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

262.    AENT owes a duty of care to Plaintiff and Class Members, which required it to adequately secure Plaintiff's and Class Members' Private Information.

263.    AENT still possesses Private Information regarding Plaintiff and Class Members.

264.    Plaintiff alleges that AENT's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of her Private Information will occur in the future.

265.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.  AENT owes a legal duty under the common law and state and federal laws and regulations to secure its patients' Private Information and to timely notify them of a data breach;

b.   AENT's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect patients' Private Information; and

c.   AENT continues to breach this legal duty by failing to employ reasonable measures to secure patients' Private Information.

266.   This Court should also issue corresponding prospective injunctive relief requiring AENT to employ adequate security protocols consistent with legal and industry standards to protect patients' Private Information, including the following:

a.   Order AENT to provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members.

b.   Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, AENT must implement and maintain reasonable security measures, including, but not limited to:

i.     engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on AENT's systems on a periodic basis, and ordering AENT to promptly correct any problems or issues detected by such third-party security auditors;

ii.    engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.   auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.     segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of AENT's systems;

v.      conducting regular database scanning and security checks;

vi.     routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

vii.    meaningfully educating its current and former patients and employees about the threats they face with regard to the security of their Private Information, as well as the steps they should take to protect themselves.

267.    If an injunction is not issued, Plaintiff will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at AENT. The risk of another such breach is real, immediate, and substantial. If another breach at AENT occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

268.    The hardship to Plaintiff if an injunction does not issue exceeds the hardship to AENT if an injunction is issued. Plaintiff will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of AENT's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and AENT has a pre-existing legal obligation to employ such measures.

269.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at AENT, thus preventing future injury to Plaintiff and other patients whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, her minor son, E.N-H., and the Classes described above, seeks the following relief:

a.  An order certifying this action as a Class action, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff and her minor son are proper representatives of the Classes requested herein;

b.  Judgment in favor of Plaintiff and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein;

d.  An order instructing AENT to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class Members;

e.  An order requiring AENT to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiff and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all triable issues.

DATED: June 7, 2023

**SIRI & GLIMSTAD LLP**

*/s/ Mason A. Barney*

Mason A. Barney
Tyler J. Bean (*pro hac vice* to be filed)
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: tbean@sirillp.com

*Attorneys for Plaintiff and the Putative Class*